Timothy A. Adams, Esq. SBN 208637
Jennifer J. Kropke, Esq. SBN 230303
**ROBERTS & ADAMS**
20042 Beach Blvd.
Huntington Beach, CA 92648
Telephone: (714) 698-0239
Facsimile: (714) 698-0243

Attorneys for Plaintiff
B.M., a minor child by and through R.M.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.M. a minor child by and through R.M. | CASE NO.: 08-CV-412-L-JMA |
| Plaintiff, | **REQUEST FOR JUDICIAL NOTICE** |
| vs. | |
| ENCINITAS UNION SCHOOL DISTRICT, | |
| Defendant. | |

Plaintiff B.M., by and through his attorneys, hereby requests the Court to take Judicial notice pursuant to Federal Rule of Evidence 201 of the following judicial decisions:

//
//
//
//

-1-
REQUEST FOR JUDICIAL NOTICE
CASE NO.: 08-CV-412-L-JMA

1. *Joshua A. v. Rocklin Unified Sch. Dist.*, 2007 WL 2389868 (E.D. Cal. 2007). Attached as Exhibit "A".
2. *Student v. San Luis Coastal Unified Sch. Dist.*, 102 LRP 7650 (Cal. Special Education Hearing Office 2001). Attached as Exhibit "B".

DATED:  March 14, 2008

ROBERTS & ADAMS

By: _____
Timothy A. Adams
Jennifer L. Kropke
Attorneys for Plaintiff B.M., by and through R.M.

# EXHIBIT A

**48 IDELR 187**

107 LRP 51073

**JOSHUA A., a minor, by and through JORGE A., his guardian ad litem, Plaintiff, v. ROCKLIN UNIFIED SCHOOL DISTRICT, and DOES 1-25, Defendants**

U.S. District Court, Eastern District of California

CV 07-01057 LEW(KJMx)

**August 17, 2007**

**Related Index Numbers**

45.015 Placement

355.025 In General

390.027 Stay-Put

**Judge / Administrative Officer**

RONALD S.W. LEW

**Case Summary**

Despite claiming that a change in service providers would not alter the amount or quality of the services provided to a 6-year-old boy with autism, a California LEA could not convince a District Court to exclude the child's current service provider from a stay-put order. The court determined that a change in service providers would amount to an impermissible change in the child's educational placement. The court pointed out that the IEP team clearly contemplated that the non-public agency would be the child's service provider. Not only did the document identify the agency as a service provider, the court observed, but the agency participated in an October 2005 IEP meeting. Handwritten notes from that meeting indicated that the agency would provide the child's services. The court further rejected the LEA's argument that the child would receive identical services from a public agency. "Altering the [service provider] would require [the child] to change from one program to another, with different staffing, facilities, and knowledge of [the student's] specific disability," U.S. District Judge Ronald S.W. Lew wrote. Concluding that the LEA did not establish either a change in the child's circumstances or the unavailability of identical services, the court determined there was no reason to change the child's service provider while his parent's FAPE action was pending.

**Full Text**

**Appearances:**

APPEARANCES:

For Joshua A., Plaintiff: Bob N. Varma, LEAD ATTORNEY, Varma & Clancy, Elk Grove, CA.

For Rocklin Unified School District, Defendant: Marcella L. Gutierrez, LEAD ATTORNEY, Kronick Moskovitz Tiedemann & Girard, Sacramento, CA.

**Opinion**

**Order Granting Plaintiff's Motion for Stay Put Order & Denying Plaintiff's Request for Reimbursement Order Granting Defendant's Request for Judical Notice**

Plaintiff's Motion for Stay Put Order came on regularly for hearing on Friday August 17, 2007. The Court also issued a ruling on Plaintiff's Request for Reimbursement and Defendant's Request for Judicial Notice.

The Court has considered all of the papers and argument submitted on the matters and THE COURT NOW FINDS AND RULES AS FOLLOWS:

**A. Preliminary Issue -- Judicial Notice**

In Defendant's Opposition Requests that this Court take judicial notice of the following:

(1) OAH Order Denying Motion for Stay Put, OAH Case No. N200609663, by Administrative Law Judge Suzanne Brown, dated October 16, 2006.

(2) OAH Decision, OAH Case No. N2006110278, by Administrative Law Judge Gary A. Geren, dated May 25, 2007;

(3) Amicus Brief filed by the United States Department of Education, in the Seventh Circuit case of *John M. v. Board of Education of Evanston*

*Township High School District*, 2007 WL 1571154, dated May 21, 2007; and

(4) *Letter to Rieser* decision by the United States Department of Education's Office of Special Education Programs, 211 IDELR 403 (July 17, 1986).

Finding that these documents are all capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, the Court hereby GRANTS Defendant's Request for Judicial Notice.

## I. Introduction

Joshua A. ("Plaintiff") a six year-old boy diagnosed with autism, has been receiving special education services pursuant to the parties last agreed upon Individual Educational Plan ("IEP"), dated October 14, 2005. Since that date, the special education services have been provided through Therapeutic Pathways, Inc. a non-public agency ("NPA") and partially financed through Rocklin Unified School District ("Defendant").

Defendant attempted to alter Plaintiff's educational placement and substitute the non-public agency services for public agency services beginning February, 2005. However, Plaintiff has consistently refused, stating that the proposed changes will not adequately address Plaintiff's educational needs.

In November 2006, Defendant sought administrative review to determine whether the elimination of Therapeutic Pathways' services and placement into public school would be a violation of the FAPE provisions. After a nine day hearing in March 2007, the ALJ held that Defendant was able to place Plaintiff in public school without violating FAPE.

On June 23, 2007, Plaintiff filed an appeal with this Court seeking a de novo review of the ALJ's decision. That matter is still pending.

On July 10, 2007, Defendant informed Plaintiff that Defendant would be changing the special education service provider from Therapeutic Pathways to an unspecified NPA provider as of August 1, 2007. [See Pl. Ex. 11].

On July 19, 2007, Plaintiff filed the instant motion under 20 U.S.C. # 1415(j) to prevent Defendant from altering Plaintiff's educational services through Therapeutic Pathways until the completion of the appeal process. Plaintiff also seeks reimbursement for costs incurred as a result of Defendant's August 1, 2007 refusal to pay for Plaintiff's services through Therapeutic Pathways.

## II. Discussion

### A. This Court has Jurisdiction Over Instant Matter

District Courts have jurisdiction to hear claims brought under the IDIEA. 20 U.S.C.S. # 1415 et seq. This jurisdictional right includes the right to issue Stay Put Orders. Therefore, the instant matter is properly before the Court.

### B. Plaintiff is Entitled to A Stay Put Order

The unequivocal language of 1415(j), expresses Congress' intent to ensure that a student's special education services remained constant during the pendency of any appellate process. *See Honig v. Doe*, 484 U.S. 305, 329, (1988).

Plaintiff is seeking an original Stay Put Order and not attempting to alter an existing Stay Put Order, therefore, it unnecessary for Plaintiff to meet the traditional preliminary injunction standards. 20 U.S.C.A. # 1415(j)[1] *See also Honig*, 484 U.S. at 333 ([i]n any suit brought by parents seeking injunctive relief for a violation of # [1415(j)], the burden rests with the school district to demonstrate that the educational status quo must be altered.").

Defendant asserts that the Court should follow the holding of *Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176 (9th Cir. 2002). However, even Defendant concedes that factually and procedurally distinguishable from the instant matter. The *Johnson* Court held that when a party seeks to enjoin a preexisting Stay Put Order, that party must meet the traditional preliminary injunction standards. *Id.* at 1180. The *Johnson* Court also recognized that other

Circuits apply an automatic injunction standard to stay put orders, and distinguished those cases on procedural grounds only. *Id. (citing Zvi D. v. Ambach,* 694 F.2d 904, 906 (2d Cir. 1982; and *Drinker v. Colonial Sch. Dist.,* 78 F.3d 859, 864 (3d Cir. 1996)). Thus, this Court's ruling does not conflict with *Johnson.*

Therefore, as Plaintiff is seeking an original Stay Put Order, the Order is issued automatically.

## C. Therapeutic Pathways' Services Must be Included In Plaintiff's Stay Put Order

The purpose of the stay put provision is to maintain the status quo and to prevent school districts from unilaterally denying placement to a student while a dispute over the placement is being resolved. *Honig,* 484 U.S. at 326; *see also Van Scoy v. San Luis Coastal Unified Sch. Dist.,* 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005). The stay put requirement should allow the student to maintain the status quo, to the extent possible, until the finality of the student's placement has been reached. *Johnson,* 287 F.3d at 1180. This will ensure that the student's education remains continuous.

In the instant matter, Plaintiff's current educational placement is clearly ascertainable. He is, and has been, receiving special education services from the same provider for more than two years.

Under the strict interpretation of # 1415(j), Plaintiff's "current educational placement" is not credibly in question. Defendant, however, citing several OAH decisions, asserts that legal precedent demands this Court determine the "then current educational placement" through an examination of the IEP. [Def. Opp. at 7-8]. Even assuming that Defendant's assertion is correct, Therapeutic Pathways would still be required under the Stay Put Order.

Where controversy arises regarding the physical component of an order to stay put, the Ninth Circuit looks to the individualized education program ("IEP"), to determine the "then current educational placement." *Johnson,* 287 F.3d at 1180; *Ms. S v. Vashon Island Sch. Dist.,* 337 F.3d 1115, 1133 (9th Cir. 2003).

Defendant maintains Therapeutic Pathways is not required by the IEP because Therapeutic Pathways is not specified as the non-public agency, therefore Defendant's obligation is limited only to providing the services of a non-public agency. [Def. Opp. at 7].

Defendant reaches this conclusion through the examination of the single "IEP Services" page of the IEP document. [Def. Opp. at 10]. However, 20 U.S.C.S. # 1414(d) controls and enumerates multiple categories of information that are not included on the single page Defendant references. *Id.*

After examination of the entire IEP, the Court is satisfied that IEP does make reference to the services provided by Therapeutic Pathways. Indeed, the IEP lists Therapeutic Pathways under "IEP Agency Linkages". [Pl. Ex. 1, page 5]. Further, given the intent of the entire statutory scheme, this Court cannot simply ignore the entirety of the evidence before it, as Defendant requests. For example, Therapeutic Pathways participated in the October 15, 2005 IEP meeting and handwritten notes taken at that meeting indicate that Therapeutic Pathways will be providing Plaintiff with special education services. [Pl. Ex. 1].

Therefore, while the Court does not find it necessary to examine the IEP to reach its conclusion, examination of the IEP supports the conclusion that Plaintiff's Stay Put Order includes the services of Therapeutic Pathways.

Defendant maintains that changing service providers would not alter the status quo because Plaintiff would still be receiving the same treatment at home through a non-public service provider. [Def. Opp. at 13-14]. This argument is unpersuasive. First, the plain language of the statute requires Plaintiff to remain in his "then current educational placement." Altering the NPA would require Plaintiff to change from one program to another, with different staffing, facilities and knowledge of Plaintiff's specific disability. This disruption appears to be exactly what

Congress intended to avoid through # 1415(j).

Defendant is accurate that Plaintiff is not inherently-entitled to identical services where those services are no longer possible or practicable. [Def. Opp. at 8-13. *See, e.g. Ms. S. ex rel. G v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1133 (9th Cir. 2003) (upholding a School District's placement of a transfer student because the school attempted to comply with the most recent IEP.) ("Although the 'stay-put' provision is meant to preserve the status quo, we recognize that when a student transfers educational jurisdictions, the status quo no longer exists .... the new district must implement the last agreed-upon IEP 'to the extent possible.'") *Id.*

*Ms. S.* is distinguishable from the instant case because identical services are available, and Plaintiff has not changed circumstance such that a change in service providers would be warranted.

Indeed, each case relied on by Defendant is distinguishable for the same reason -- those cases addressed a change in circumstances necessitating an alteration from the literal "current educational placement."

Moreover, unlike each case cited by Defendant, there has been no review into whether the yet unidentified non-public agency proposed by Defendant would comply with the IEP or would provide adequate services. Defendant has yet to present any evidence regarding the proposed NPA or any justification for changing service providers. Even the cases cited by Defendant, demand that the substitution comply with the IEP.

The Court recognizes that School Districts must have the ability to contract with service providers, however, where Congress fails to make an exception, it is not within the jurisdiction of this Court to make one.

Should the Defendant wish to alter the Stay Put Order, it could do so by complying with the rules set out in Johnson and meet the traditional preliminary injunction standards. Defendant has failed to do that.

Based on the above analysis, Plaintiff's Motion for Stay Put Order is GRANTED.

### D. Plaintiff is Not Currently Entitled to Reimbursement

Plaintiff seeks reimbursement for costs incurred as a result of refusing to consent to Defendant's alternate placement and continuing to pay out of pocket for Therapeutic Pathways. Parents may be entitled to reimbursement for the costs of placement or services they have procured for their child when: (1) the school district failed to provide a FAPE; and (2) the private placement or services procured are (a) proper under IDEA and (b) reasonably calculated to provide educational benefit to the child. 20 U.S.C.S. # 1412; *see also Sch. Committee of Burlington v. Dept. of Educ.*, 471 U.S. 359, 369 (1985); *Glendale Unified Sch. Dist. V. Almasi*, 122 F. Supp. 2d 1093, 1105 (9th Cir. 2000); *Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1496 (9th Cir. 1994).

Plaintiff cited no authority, nor does there appear to be any, that would entitle Plaintiff to reimbursement prior to the determination of a FAPE violation.

Here, there has been no determination that Defendant violated FAPE. Indeed, that issue is before the Court on appeal. Therefore, this issue is not ripe for determination.

Plaintiff's Request for reimbursement is hereby DENIED.

### III. Conclusion

In accordance with the above ruling, Defendant is hereby ORDERED to Reinstate the services provided to Plaintiff prior to August 1, 2007.

IT IS SO ORDERED.

[1]During the pendency of any proceedings initiated under the Act, unless the state or local educational agency and the parents or guardian of a disabled child otherwise agree, "the child *shall* remain in the then current educational placement." 20 U.S.C.S # 1415(j) (emphasis added).

**Statutes Cited**
20 USC 1415(j)

**Special Ed Connection Case Report**

20 USC 1414(d)

**Cases Cited**

484 U.S. 305
287 F.3d 1176
694 F.2d 904
78 F.3d 859
353 F. Supp. 2d 1083
337 F.3d 1115
471 U.S. 359
122 F. Supp. 2d 1093
31 F.3d 1489

EXHIBIT B

102 LRP 7650
## SAN LUIS COASTAL UNIFIED# SCHOOL DISTRICT
### California State Educational Agency
### SN01-01908
### September 13, 2001
### Judge / Administrative Officer
Hearing Officer: Michael F. Geary

**Full Text**
**Appearances:**

### Order Granting in Part and Denying in Part Motion for Stay Put Motion for Stay Put

### Background

STUDENT is a thirteen-year-old student who resides with her parents within the geographical boundaries of the San Luis Coastal Unified School District (District). She is eligible for special education and related services on the basis of mental retardation (Down Syndrome). STUDENT's parents filed this due process matter on her behalf on August 27, 2001. Petitioner's counsel Kathryn E. Dobel also invoked stay put.

### Facts

The Petitioner asks the Hearing Officer to determine that the stay put placement consists of the program and services acceptable to them and described in the June 13, 2000 IEP, the mediation agreement of that date (Case No. SN 1833-99) and the May 17, 2001 IEP. These are specifically described as: occupational therapy (OT) as needed, speech and language services two times per week for thirty minutes each, the services of inclusion specialist Rick Clemens, and a 1:1 full-time aide.[1]

The District responded to the Petitioner's stay put motion and offered a declaration from Katherine Thomas-Anderson, Ed.D., the director of student services for the District, in support of its response. It states that it is prepared to provide stay put services as described in the June 13, 2000 IEP and mediated agreement, and to deliver those services to STUDENT at Bellevue Santa Fe Charter School (Bellevue).[2] However, the District contends that stay put should not include the services of a full-time 1:1 aide because STUDENT was not provided with that service in her last educational placement.

The District also objects to the request by the parents that the Petitioner be allowed to accept only some of the offered and agreed-upon services while choosing to obtain others from their own private providers. The District asserts that the parents' option puts it in a "double bind" in that the patents will seek reimbursement from the District for certain services that were privately obtained by the parents but that the District was prepared to deliver as part of the stay put placement. Such unilateral changes to the stay put placement, it argues, are in violation of Cal. Educ. Code # 56504.5. Finally, it points out that the May 17, 2001 IEP was never agreed upon or implemented and cannot, therefore, be a basis for stay put.

### Discussion

Application of stay put is automatic upon filing of a request for due process hearing. The right to stay put is unequivocal. *Honig v. Doe* (1988) 484 U.S. 305. Under both federal and State law, a special education student is entitled to remain in his or her current educational placement pending resolution of the due process hearing procedures, absent an agreement by the parties otherwise. 20 U.S.C. # 1415(j); Cal. Educ. Code # 56505(d). The purpose of stay put is to ensure some stability in a disabled student's school placement pending resolution of due process proceedings. *Stacy G. v. Pasadena Independent School Dist.*, (5th Cit. 1983) 695 F.2d 949; *Zvi D. v. Gordon Ambach*, (2nd Cit. 1982) 694 F.2d 904. According to federal law, a student's "present educational placement" is typically the placement which is called for by the student's IEP and which has been implemented prior to the dispute. *Thomas v. Cincinnati Board of Education*, (6th Cit. 1990) 918 F.2d 618, 625.

The Petitioner does not state why the Hearing Officer should rely on the May 17, 2001 IEP in determining the appropriate stay put placement. A review of that IEP reveals that it was not agreed to by the parties, and it is not a proper basis for stay put.

Both parties urge that stay put be based, at least in part, on the June 2000 IEP and mediated agreement. The June 2000 IEP states that STUDENT would spend 80% of her day in general education and 20% in special education. The declaration of Dr. Thomas-Anderson states that she agreed with the parents to implement stay put at Bellevue with full-time placement of STUDENT in a general education class and 10% pull-out services. The June 2000 IEP and the concurrent mediated agreement show that STUDENT was to have thirty-minute speech and language therapy sessions three times per week by a therapist trained and certified in Lindamood Bell methodology, OT as needed, and the services of inclusion specialist Anne Davies one hour per week and inclusion consultant Rick Clemens on a specific fifteen days per school year schedule. The Hearing Officer finds that stay put includes this program and these services.[3]

There is no reference in the June 2000 IEP and mediated agreement to a 1:1 aide. The father stated in a declaration that a full-time aide was provided to STUDENT during the 2000-2001 school year. The basis of his knowledge was not described. He also declared that the District admitted in correspondence that the full-time aide was provided. Copies of the correspondence were not provided. Mrs. PARENT also submitted a declaration, albeit a late one, in which she stated that STUDENT had a full-time aide while in the general education classroom. Again, the basis of her knowledge was not described so the Hearing Officer cannot give substantial weight to it.

The District submitted a declaration from the director of student services stating that school and District personnel records show that the aide was provided for three hours per day last school year. The Hearing Officer could not determine from the record how many hours per day STUDENT was in a general education class during the 2000-2001 school year. A minute order was issued directing the parties to submit supplemental declarations stating: 1) the number of hours per day the student spent in general education classes during the 2000-2001 school year; 2) the number of hours per day the student spent in special education classes or programs or receiving DIS during that same year; 3) the number of hours per day that the student had the services of a 1:1 aide during that same year; and 4) the specific agreement of the parties regarding the provision of 1:1 aide services by the District during that same year. The declarations were also to demonstrate the bases for the information provided and that the declarant is competent to testify to the facts stated.

STUDENT's mother submitted a supplemental declaration. It stated that STUDENT was in a general education classroom for 24.5 hours per week. She declares that, "It [was her] understanding that" STUDENT had an aide during that time, but she also states, "STUDENT always has had 1:1 support in general education." Contrary to the Hearing Officer's minute order, Mrs. PARENT does not state the basis of her knowledge or that she would be competent to testify to those facts. Nor does she recite the specific terms of any agreement with the District regarding the provision of 1:1 aide services during the 2000-2001 school year. Portions of the IEPs from June 4, 1998 and May 27, 1999 were also provided by Petitioner. Neither makes clear reference to an agreement to provide a full-time aide for STUDENT while she was in a general education classroom. The first states that " . . . an aide will be available to the teacher to support and [implement] modified curriculum and participate in classroom activities [and] ... during recess ... and during the first two weeks of school to assist with the transition." The second states that STUDENT "requires access to special education personnel ... when she is in the general education program," including PE, music, art, assemblies and field trips .[4]

The District submitted a supplemental declaration from Dr. Thomas-Anderson stating that

Copyright # 2007 LRP Publications

**Special Ed Connection Case Report**

STUDENT had an instructional aide assigned to her daily from 10:15 a.m. to 11:45 a.m. and from 1:00 p.m. to 2:00 p.m., a total of two and one-half hours per day. The declaration also states that the aide assisted the general education teacher with inclusion materials on the days when STUDENT was pulled out for additional services. The aide is identified by name and the declarant states that the information is based on the aide's schedule and payroll records.

Based upon the current record, the Hearing Officer finds that STUDENT's "present educational placement" at the time the dispute arose included the services of an instructional aide during the time that she participated in the general education program. The same service must be delivered to her as part of her stay put placement. This need not be a full-time aide or an aide assigned exclusively to STUDENT. It must, however, be adequate to allow STUDENT to effectively access the general education curriculum.

The District's other objection to the stay put requested by the parents is that it allows the parents to decide which of the offered services it will accept from the District's providers.[5] The Hearing Officer is aware of no law which requires that parents accept all services offered by a district. Nor is there any specific statutory or regulatory prohibition against parents obtaining necessary services from private providers at their own expense. The District's concern that a stay put order will affect its reimbursement obligation is unfounded. A district's obligation is to make a FAPE available to the student. 20 U.S.C. ## 1400 (d) and 1412(a)(5)(A); Cal. Educ. Code ## 56000 and 56031. A District must make available, in a timely manner and at no charge to the parent, a FAPE that meets the State educational standards and that conforms to the student's IEP. 20 U.S.C. Section 1401(8). If the district does this, it fulfills its obligation to the student. A unilateral choice by the parents to decline a program or service made available by a district does not necessarily entitle the parents to reimbursement for privately obtained programs or services. Cal. Educ. Code # 56175.

Accordingly, during the pendency of this due process proceeding, and absent an agreement otherwise between the parties, the District shall maintain STUDENT in the general education curriculum at Bellevue with full-time placement of STUDENT in a general education class and 10% pull-out services. Services to be made available to STUDENT shall include thirty-minute speech and language therapy sessions three times per week by a therapist trained and certified in Lindamood Bell methodology, OT as needed, the services of inclusion specialist Anne Davies one hour per week, and the services of inclusion consultant Rick Clemens on a specific fifteen days per school year schedule as outlined in the mediated agreement of June 13, 2001. In addition, STUDENT shall be provided with the services of an instructional aide for a period of time each day adequate to enable her to access the general education curriculum.

[1] The two references in the motion to speech and language services are presumed to be redundant The claim to the services of the full-time 1:1 aide was added by a supplemental declaration from the father. The IEPs refer more generally to instructional aide time.

[2] The parents want STUDENT to be mainstreamed at Bellevue, a public charter school in their neighborhood.

[3] While the declaration of Dr. Thomas-Anderson states that STUDENT did not receive OT during the 2000-2001 school year, the obligation to provide that service "as needed" remains.

[4] The May 17, 2001 IEP, to which the parents did not consent, stated that, "instructional aide time will be provided to support the general and special education teachers who work with STUDENT."

1  Timothy A. Adams, Esq. SBN 208637
   Jennifer J. Kropke, Esq. SBN 230303
2  Drew Massey, Esq. SBN 244350
   **ROBERTS & ADAMS**
3  20042 Beach Blvd.
   Huntington Beach, CA 92648
4  Telephone: (714) 698-0239
   Facsimile: (714) 698-0243
5
   Attorneys for Plaintiff
6  B.M., a minor child by and through R.M.

7

8              **UNITED STATES DISTRICT COURT**
9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12 | B.M. a minor child by and through R.M. ) CASE NO.: 08-CV-412-L-JMA
                                           )
13 |            Plaintiff,                  ) **PROOF OF SERVICE**
                                           )
14 |                                        )
                                           )
15 |                                        )
        vs.                                 )
16 |                                        )
                                           )
17 | ENCINITAS UNION SCHOOL                 )
    DISTRICT,                               )
18 |                                        )
                                           )
19 |            Defendant.                  )
                                           )
20 |                                        )
    _____     )
21

22         I, Heyman Hakimi, declare:

23

24         1. I am employed in the County of Orange, State of California. I am over
25  the age of 18 years and not a party to the within action; my business address is 20042
    Beach Blvd, Huntington Beach, California 92648.
26
    //
27
    //
28

-1-
**PROOF OF SERVICE**

2. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that, on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

3. On **March 17, 2008,** I served the foregoing documents described as

1) APPLICATION FOR ORDER SHORTENING TIME
2) CERTIFICATION IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME
3) PROPOSED ORDER SHORTENING TIME FOR THE MOTION FOR STAY PUT
4) PLAINTIFF'S MOTICE AND NOTICE OF MOTION FOR "STAY PUT" PLACEMENT
5) PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF IT'S MOTION FOR "STAY PUT" PLACEMENT
6) DECLARATION OF JENNIFER J. KROPKE IN SUPPORT OF PLAINTIFF'S MOTION FOR "STAY PUT" PLACEMENT EXHIBIT "A
7) REQUEST FOR JUDICIAL NOTICE

4. I served these documents on the interested parties in this action [X] by placing [ ] the original [X] a true copy thereof enclosed in a sealed envelope addressed as stated below:

Anahid Hoonanian
Miller, Brown & Dannis
301 East Ocean Blvd.
Suite 1750
Long Beach, CA 90802

-2-
**PROOF OF SERVICE**

5. I faxed on this date the above document to the parties listed on the attached list.

DATED:   March __, 2008

_____
HEYMAN HAKIMI

## Service List

1

2

3   Anahid Hoonanian                                         Facsimile:. (562)366-8505
    Miller, Brown & Dannis
4   301 East Ocean Blvd.
    Suite 1750
5   Long Beach, CA 90802

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-
**PROOF OF SERVICE**