Timothy A. Adams, Esq. SBN 213896
Jennifer J. Kropke, Esq. SBN 230303
Drew Massey, Esq. SBN 244350
**ROBERTS & ADAMS**
20042 Beach Blvd.
Huntington Beach, CA 92648
Telephone: (714) 698-0239
Facsimile: (714) 698-0243

Attorneys for Plaintiff
B.M., a minor child by and through R.M.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.M. a minor child by and through R.M. | CASE NO.: 08-CV-412-L-JMA |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO DISMISS** |
| vs. | |
| ENCINITAS UNION SCHOOL DISTRICT, | Judge: Honorable M. James Lorenz |
| | Location: Courtroom 14 |
| | Date: June 9, 2008 |
| Defendant. | Time: 10:30 a.m. |

PLAINTIFF, B.M., by and through his attorneys, Roberts & Adams, hereby submits this Memorandum of Points and Authorities in support of his Motion to Dismiss Defendant Encinitas Union School District's Counterclaim in the above captioned matter.

//
//
//

# I.

# INTRODUCTION

On or about March 4, 2008, Plaintiff filed his Complaint in the above captioned action. On or about March 6, 2008, Plaintiff properly served a copy of the summons and complaint. On or about March 26, 2008, Defendant Encinitas Union School District ("District") filed its Answer to Plaintiff's Complaint and also filed a "Counterclaim of Defendant Encinitas Union School District Against B.M., a Minor By and Through R.M." (hereinafter "Counterclaim").

The District asserts that its Counterclaim is being made against B.M., as well as his parents R.M. and N.M. (Counterclaim, 1:27). It should be noted that neither R.M. or N.M. are parties to the above captioned action. In the Counterclaim, the District seeks an action for breach of contract, but requests only specific performance, declaratory, and injunctive relief. However, the facts as plead in the Counterclaim demonstrate that the case should be dismissed for failure to state a claim.

# II.

# ARGUMENT

### A. The District's Claim Against B.M.'s Parents is Procedurally Improper

A Counterclaim may only be brought against an opposing party. Fed. R. Civ. Pro. 13(a)-(f) (hereinafter "FRCP"). Although the District has captioned their Counterclaim as being only against "B.M.", the text of the Counterclaim specifically seeks relief against B.M.'s parents, R.M. and N.M. (Counterclaim, 1:27). N.M. is not a party to this lawsuit, and therefore the District may not counterclaim against her. R.M. is involved in this case only as guardian ad litem for B.M., and not in his own capacity. Therefore, R.M. is also not a party to this action. Because neither R.M. nor N.M. is an opposing party, any requests for relief made against them in the Counterclaim must fail as improperly raised.

//

### B. The District's Counterclaim Discloses that Plaintiff Has Not Breached the Settlement Agreement

Although the Court is generally restricted to the face of the complaint, for purposes of a Motion to Dismiss for Failure to State a Claim, any documents attached to the complaint are considered part of the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989). In this case, the District attached a Settlement Agreement ("Agreement") to their Counterclaim. Review of that Agreement, however, is fatal to their claims for breach.

By the terms of the Agreement, the District was to provide certain services to B.M. However, the Agreement requires that those services will be provided only through the end of the 2006-2007 school year and extended school year. (Counterclaim, Exhibit 1, ¶¶ a-e, g). The 2007-2008 school year began August 20, 2007, the "First Student Day" of the year.[1] Therefore, B.M. was obligated to receive these services up to and until August 20, 2007.

The District's Counterclaim admits that it was not until "late September or early October" of 2007 that B.M. stopped attending the District's program. (Counterclaim, 5:1-2). By the terms of the Agreement, B.M. was no longer required to receive those services. The contract had been completed and fulfilled. Here, no term of the Agreement has been violated and therefore, no breach of contract action can lie. Because there has been no breach, there can be no action for specific performance (Counterclaim, 5:17-19) nor for prospective injunctive relief (Counterclaim, 7:8-9).

Further, declaratory relief can be provided only where a "case or actual controversy" exists. 28 U.S.C. § 2201. This language refers to the same types of cases that are justiciable under Article III of the Constitution. *Aetna Life Ins. Co. v. Haworth*,

---

[1] Concurrently filed with this Motion is a Request for Judicial Notice of the Encinitas Union School District School Calendar for the 2007/2008 school year. This Court may properly consider items judicially noticed in a Motion to Dismiss. *Lee v. Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).

-3-

300 U.S. 227, 239-40 (1937). By the District's own admissions and exhibits, the time for performance under the Agreement had long since passed before B.M. ceased receiving services. Therefore, no current claim or controversy exists (nor even a current contract) that would warrant the District's request for declaratory relief. (Counterclaim, 6:15-16). As such, this claim must be dismissed with prejudice.

### C. The District's Anticipated Stay-Put Argument is Inapplicable

B.M. anticipates that the District will attempt to confuse these simple facts by appealing to the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1415(j). Stay-put requires only that the child be maintained in his "then current educational placement." *Id.* In general, the "then current" placement refers to the last agreed upon and implemented Individualized Education Program ("IEP"). However, such is not always the case. The stay-put provision "connotes preservation of the status quo, it [therefore] refers to the operative placement actually functioning at the time the dispute first arises." *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625-26 (6th Cir. 1990). In other words, the "then current" placement means nothing more than the placement and services a child received prior to the beginning of the dispute.

Here, the *then current* placement was the services that B.M. had been receiving before the dispute. Those services were described in the completed Agreement. However, the mere fact that the "then-current" services were allegedly last described in a settlement agreement, rather than an IEP does not operate to revive the contract.[2] The term of the Agreement has expired and the District cannot pursue an action for breach of a completed contract.

---

[2] Plaintiff does not agree that the Settlement Agreement was the last document to describe the placement. For purposes of this Motion, however, Plaintiff attacks the Counterclaim as though the allegations were true.

-4-

1  In addition, B.M. anticipates that the District may attempt to argue that the language of the stay put provision (i.e. that the student "shall remain" in the then current placement) creates a barrier on B.M. preventing his parents from unilaterally removing their child from stay put placement and services. The Supreme Court, however, has held otherwise. The Supreme Court has held that, in spite of the stay put provision, a parent may remove their child from the stay-put placement, provide appropriate placement and services at private expense, and still seek recovery against the school district for that appropriate placement. *Sch. Committee of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-370 (1985). Speaking specifically to the stay-put provision, the Court held that,

> "parents will often notice a child's learning difficulties while the child is in a regular public school program. If the school officials disagree with the need for special education or the adequacy of the public school's program to meet the child's needs, it is unlikely they will agree to an interim private school placement while the review process runs its course. Thus, under the [school district's] reading of [the stay put provision], the parents are forced to leave the child in what may turn out to be an inappropriate educational placement or to obtain the appropriate placement only by sacrificing any claim for reimbursement. <u>The Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives.</u>" *Id.* at 372 (emphasis added).

Therefore, any claim by the District that the stay_put provision operates to restrict B.M.'s parents' ability to place their child in a private program and seek reimbursement for such placement is inaccurate and erroneous. *See also*, 34 C.F.R. § 300.148. Consequently, the District simply lacks any authority to "enforce" stay_put on the child.

//
//
//
//
//
//
//

## III.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court dismiss the District's Counterclaim as against R.M., N.M., and B.M. with prejudice.

DATED: April 15, 2008                ROBERTS & ADAMS

By:   s/ Drew Massey

Timothy A. Adams
Jennifer J. Kropke
Drew Massey
Attorneys for Plaintiff B.M., by and through R.M.