BEFORE THE
OFFICE OF ADMINISTRATIVE HEARINGS
SPECIAL EDUCATION DIVISION
STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of:<br><br>STUDENT,<br><br>       Petitioner,<br><br>v.<br><br>PAJARO VALLEY UNIFIED<br>SCHOOL DISTRICT,<br><br>       Respondent. | OAH No. N2006100081<br><br><br><br>**ORDER REGARDING PETITIONER'S<br>STAY PUT PLACEMENT** |

On October 3, 2006, Geralyn M. Clancy, attorney for Petitioner Student (Student), filed a request for a due process hearing (Complaint)[1] naming Pajaro Valley Unified School District (District) as Respondent, and a motion for a stay put placement. On October 20, 2006, District filed its opposition to Student's motion for a stay put placement.

APPLICABLE LAW

Title 20 United States Code section 1415(j)[2] provides: "Except as provided in subsection (k)(4) [concerning student disciplinary proceedings], during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . ."

34 Code of Federal Regulations part 300.518(a) (2006) provides: "(a) Except as provided in . . . [the regulation concerning student disciplinary proceedings], during the pendency of any administrative or judicial proceeding regarding . . . [a request for a due process hearing], unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement."[3]

---

[1] A request for a due process hearing under Education Code section 56502 is the due process complaint notice required under Title 20 United States Code section 1415(b)(7)(A).
[2] All citations are to Title 20 United States Code, unless otherwise noted.
[3] This remains unchanged from the former regulation, 34 Code of Federal Regulations part 300.514(a) (1999).

**EXHIBIT 2**

Education Code section 56505, subdivision (d), provides: ". . . [D]uring the pendency of the hearing proceedings, including the actual state-level hearing, or judicial proceeding regarding a due process hearing, the pupil shall remain in his or her present placement, except as provided in . . . [the federal regulation concerning student disciplinary proceedings], unless the public agency and the parent or guardian agree otherwise. . ."

Education Code section 56325, subdivision (a)(1), provides in pertinent part, that a student who transfers into a district from another district, which is not within the same local plan and in which the student was enrolled in a special education program within the same academic year, the district shall provide the student with a FAPE, including services comparable to those described in the previously-approved IEP for a period not to exceed 30 days.

The provisions of Section 1415(j) and Education Code section 56505, subdivision (d), are commonly referred to as "stay put." The purpose of stay put is to maintain the status quo of the student's educational program pending resolution of the due process hearing. (*Stacey G. v. Pasadena Independent School Dist.* (5th Cir. 1983) 695 F.2d 949, 953; *In re John K.* (1985) 170 Cal.App.3d 783, 791.) For purposes of stay put, a student's current educational placement is typically the placement described in the child's most recently implemented Individualized Education Program (IEP). (*Johnson v. Special Educ. Hearing Office* (9th Cir. 2002) 287 F.3d 1176, 1180; *Thomas v. Cincinnati Bd. of Educ.* (6th Cir. 1990) 918 F.2d 618, 625.) If a dispute arises before an IEP is implemented, the current educational placement is the operative placement under which the child is actually receiving instruction at the time the dispute arises. (*Thomas v. Cincinnati Bd. of Educ., supra*, 918 F.2d at p. 626.)

When a student transfers into a new school district and a dispute arises about the most appropriate educational placement in the new district, the student's stay put placement is the last-agreed upon IEP. (*Ms. S. ex rel. v. Vashon Island Sch. Dist.* (9th Cir. 2003) 337 F.3d 1115, 1134.) If it is not possible for the new district to implement the last agreed-upon IEP, the district must approximate the student's old IEP as closely as possible. (*Ibid.*)

A student's placement set forth in a settlement agreement reached by the parties may constitute the student's current educational placement and be found to be the student's stay put placement in a subsequent dispute. (See *Casey K. v. St. Anne Comty. High Sch. Dist. No. 302* (7th Cir. 2005) 400 F.3d 508, 513 [parties did not argue that settlement agreement cannot create a current educational placement]; *Doe by Doe v. Independent Sch. Dist. No. 9* (N.D. Okla. 1996) 938 F.Supp. 758, 761; see *Evans v. Bd. of Educ.* (S.D. N.Y.) 921 F.Supp. 1184, 1188 [unwritten agreement held to be current educational placement]; see also *Jacobsen v. District of Columbia Bd. of Education* (D.D.C. 1983) 564 F.Supp. 166, 171-173 [district's decision to place student in private school is current educational placement].)

Other cases have found that a student's placement, as described in a settlement agreement, is not the student's current educational placement and is not the student's stay put placement. (*D. v. Ambach* (2nd Cir. 1982) 694 F.2d 904, 908; see *Verhoeven v. Brunswick*

2

*Sch. Comm.* (1st Cir. 1999) 207 F.3d 1, 9-10 [dicta]; also see *Leonard v. McKenzie* (D.C. Cir. 1989) 869 F.2d 1558, 1564 [hearing officer's prior decision does not constitute current educational placement for stay put purposes].)

These cases illustrate that the determination must be made on a case-by-case basis and requires a close examination of all relevant facts. A settlement agreement that provides a placement for a specific period, without more, does not preclude the agreement from being the student's current educational placement for stay put purposes. An IEP is limited to a specific period, since it is legally required to state the duration for the services. (Section 1414(d)(A)(i)(VII).) A settlement agreement that does not articulate the intent to place the student into a different placement at the end of the stated period can be the student's current educational placement. A settlement agreement that by its terms is temporary or contemplates a different placement at the end of a stated period may not be the student's current educational placement.

A settlement agreement entered into by a school district may be the student's current educational placement for the purposes of a stay put placement in a dispute with another school district in the same state. (*Casey K. v. St. Anne Comty. High Sch. Dist. No. 302, supra,* 400 F.3d at pp. 511-513.)

## DISCUSSION

Student is an 11-year-old girl who is eligible for special education services as a student with autism. On June 10, 2005, her parents entered into a settlement agreement with the Sunnyvale School District (Sunnyvale) to resolve pending disputes with that district. On July 1, 2006, Student and her family moved within District's boundaries. Student's mother contacted District concerning Student's need for special education services. Despite a series of meetings between the parties, the parents did not consent to the services District offered. The 2006-2007 school year began on August 16, 2006.

Student contends that the following provisions are included in the agreement with Sunnyvale and constitute her current educational placement for stay put purposes:

1. Occupational therapy:
   - One 60-minute session per week in a clinic setting
   - 60 minutes per month consultation in the classroom
   - District to provide transportation in the form of mileage reimbursement if the clinic services are provided by a certified non-public agency (NPA)

3

2. Play therapy:
   - 90 minutes per week
   - 30 minutes per month of consultation
   - District to provide transportation in the form of mileage reimbursement if the clinic services are provided by an NPA

3. Speech-language therapy:
   - Two 45-minutes sessions per week of individual therapy
   - Two 30-minutes sessions per week of small group therapy

4. Supervision by behavioral consultant:
   - Six hours per week at school by an NPA

5. Team meetings:
   - One meeting every other week of one and one-half hour

6. One-to-one instructional assistant trained in ABA
   - Full-time, five times per week, six hours per day

7. Specific goals and objectives are to be included

District contends that Student is not entitled to a stay put placement because there is no last agreed-upon and implemented IEP. District's position is that the settlement agreement is not the last agreed-upon and implemented IEP because the agreement does not constitute a FAPE. However, District cites no authority to support this assertion. District also contends that the settlement agreement is not binding upon District because it was not a party to the agreement. In the alternative, District relies upon *D. v. Ambach, supra*, and *Verhoeven v. Brunswick Sch. Comm., supra*, to argue that the settlement agreement was a temporary placement, is not Student's current educational placement, and cannot be her stay put placement.

District also argues that Student is not entitled to a stay put placement because she transferred into the District during the summer and did not require an interim placement or the maintenance of any educational placement. Nevertheless, District offered student an interim, 30-day administrative placement as noted below, that it contends constitutes Student's stay put placement:

1. Special day class: Five times a week, six hours per day

2. Occupational therapy: 60 minutes per week, individual services on site

3. Speech-language therapy: Two sessions per week, 45 minutes, individual and small group instruction

4

4. Behavioral specialist: 60 minutes per week, individual services on site

5. Adult supervision/aide: Five times a week, six hours per day, one-to-one on site

According to the terms of the settlement agreement, the following services included in Student's requested stay put placement were to be provided beginning the first day of the 2005-2006 school year:

1. Occupational therapy:
   − One 60-minute session per week in a clinic setting
   − 60 minutes per month consultation in the classroom

2. Play therapy:
   − 90 minutes per week
   − 30 minutes per month of consultation

3. Speech-language therapy:
   − Two 45-minutes sessions per week of individual therapy
   − Two 30-minutes sessions per week of small group therapy

4. Supervision by behavioral consultant:
   − Six hours per week at school by a behaviorist from Stepping Stones

5. Team meetings:
   − One meeting every other week of one and one-half hour

The agreement neither limits the duration of these services, nor anticipates that after a period of time the services will change. District did not argue that it was impossible to implement these services. These services constitute Student's current educational placement and her stay put placement.

Student requests three additional services in her stay put placement: transportation for occupational therapy and play therapy if they are provided by an NPA, a one-to-one instructional assistant, and specific goals and objectives to be included in Student's program. None of these services is included in Student's current educational placement.

The agreement does not include transportation services for occupational therapy or play therapy. The agreement provides that Student would have the services of an instructional assistant. The agreement specifies neither that the instructional assistant be trained in ABA, nor the hours the assistant is to provide services to Student. This lack of specificity precludes a finding that Student's current educational placement includes an instructional assistant.

The terms of the agreement concerning Student's goals and objectives are temporary.[4] Transportation, a one-to-one instructional assistant, and specific goals and objectives are not included in Student's current educational placement, because they are not included in the settlement agreement, not included with sufficient specificity, or are clearly intended to be temporary. Student's request for a stay put placement does not request a specific school or classroom placement, so this element of Student's stay put placement is not being determined.

## ORDER

Student's stay put placement is granted as follows:

1. Occupational therapy: one 60-minute session per week in a clinic setting, and 60 minutes per month consultation in the classroom;

2. Play therapy: 90 minutes per week and 30 minutes per month of consultation;

3. Speech-language therapy: two 45-minutes sessions per week of individual therapy, and two 30-minutes sessions per week of small group therapy;

4. Supervision by behavioral consultant: six hours per week at school by a behaviorist from Stepping Stones, or comparable NPA; and

5. Team meetings: one meeting every other week for one and one-half hours.

Dated: November 20, 2006

_____
JUDITH A. KOPEC
Administrative Law Judge
Special Education Division
Office of Administrative Hearings

---

[4] The agreement states that the current goals will be implemented through August 24, 2005. Sunnyvale will conduct assessments as provided in the agreement and a specifically-named team will meet to develop goals and objectives as appropriate.