Timothy A. Adams, Esq. SBN 213896
Jennifer J. Kropke, Esq. SBN 230303
Drew Massey, Esq. SBN 244350
**ROBERTS & ADAMS**
20042 Beach Blvd.
Huntington Beach, CA 92648
Telephone: (714) 698-0239
Facsimile: (714) 698-0243

Attorneys for Plaintiff
B.M., a minor child by and through R.M.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.M. a minor child by and through R.M. | CASE NO.: 08-CV-412-L-JMA |
| Plaintiff and Counterdefendant, | **REPLY TO THE DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM** |
| vs. | |
| ENCINITAS UNION SCHOOL DISTRICT, | Judge: Honorable M. James Lorenz |
| | Location: Courtroom 14 |
| Defendant and Counterclaimant. | Date: August 25, 2008 |
| vs. | |
| R.M. and N.M. | |
| Counterdefendants. | |

PLAINTIFF, B.M., by and through his attorneys, Roberts & Adams, hereby submits this Reply to Defendant Encinitas Union School District's ("District") Opposition to the Plaintiff's Motion to Dismiss.

## I.

## INTRODUCTION

On or about March 4, 2008, Plaintiff filed his Complaint in the above captioned action. On or about March 6, 2008, Plaintiff properly served a copy of the summons and complaint. On or about March 26, 2008, Defendant Encinitas Union School District ("District") filed its Answer to Plaintiff's Complaint and also filed a "Counterclaim of Defendant Encinitas Union School District Against B.M., a Minor By and Through R.M." (hereinafter "Counterclaim").

On or about April 15, 2008, Plaintiff filed his Motion to Dismiss the Counterclaim ("Motion"). On or about August 11, 2008, the District filed its Opposition to that Motion. This Reply follows.

Though Plaintiff's motion was plainly and articulately argued in six pages, the District has ambled through a confusing fourteen page response. At times, the District insists that the Counterclaim is governed by contract principles alone and not in reference to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. § 1400 *et. seq.* (District's Opposition to the Motion to Dismiss [hereinafter "District's Opposition"], 1:17-18). At other times, the District insists that application of IDEA principles, such as "stay-put," is paramount to resolving the Counterclaim. (District's Opposition, 10:15-20). This confusion results because the District at once insists that a completed contract can be breached and that the IDEA's stay-put provision (20 U.S.C. § 1415(j)) operates to bar a parent from privately placing her child. Neither contention, however, is legally accurate.

## II.

## ARGUMENT

### A. A CounterClaim may be Asserted Against "an Opposing Party"

The filing of a counterclaim is controlled by Federal Rule of Civil Procedure ("FRCP") 13. That rule specifically states that a counterclaim may be made against "an opposing party." FRCP 13(a). B.M.'s parents, R.M. and N.M., are not

parties to this litigation. The proper procedure for joining them as parties is to make a Rule 19 Motion. This the District has failed to do. The District also repeatedly relies on FRCP 13(k) for support. (District's Opposition, 5:21, 8:4). However, no such citation exists in the current FRCP.

The District also faults Plaintiff for filing his Motion "'by and through his attorneys, Roberts & Adams' rather than by and through his guardian R.M." (District's Opposition, 8:15-16). Based on this single reference, the District insists that R.M. is not involved in the Motion and therefore B.M. lacks standing to make the Motion. (District's Opposition, 8:12-22). However, as a minor, all of B.M.'s actions are implicitly taken through his appointed Guardian ad Litem. Moreover, this argument, relying on a single line of text, exalts form over substance to such a degree that it would deprive Plaintiff and R.M. of the ability to bring the Motion. Such argumentation is not founded in sound legal reasoning.

### B. The District's Counterclaim Discloses that Plaintiff Has Not Breached the Settlement Agreement

The District's Counterclaim again admits that the Settlement Agreement ("Agreement") at issue, attached as Exhibit 1 to the District's Counterclaim, obligated the Parties to abide by the placement and services only through the "end of the 2006-2007 school year." (District's Opposition, 8:27-9:2). The District also continues to admit that the alleged "breach" (where Student stopped attending the District school) occurred in "late September or early October 2007" – well into the 2007/2008 school year. (District's Opposition, 4:4-5). In other words, the alleged "breach" occurred after the *contractual* obligations between the parties had ceased. As the District, at times, insists that "contract principles govern this dispute" (District's Opposition, 1:17-18) it is a common sense principle that a completed contract cannot be breached.

The District argues that, because the Agreement does not contain a specific "termination date," that therefore the Agreement is still operative. (District's Opposition, 9-10). This is an absurd argument. By its terms, the Agreement obligates

-3-

the Parties to engage in certain behaviors, and to provide certain services, only through the end of the 2006/2007 school year. (Counterclaim, Exhibit 1, ¶¶ a-e, g). By providing that the obligations of the parties are valid (under contract principles) only through that date, the end of the 2006/2007 school year and extended school year is the effective termination date for the contract. Under the District's reasoning, the failure to include a labeled "Termination Date," complete with subheading, would render the contract enforceable in perpetuity despite the agreement of the parties to provide placement and services only through the end of the 2006/2007 school year.

### C. The IDEA's Stay-Put Provision Does Not Revive the Completed Agreement

With contract principles firmly demonstrating that the Agreement has been completed and that there was no breach during its operative timeframe, the District next insists that the IDEA's stay-put provision operates to revive the contract. The District argues, "Stay put dictates that unless the school district and parents agree otherwise, a special education student must remain in his or her present educational placement pending the completion of due process hearing procedures and/or appeal thereof." (District's Opposition, 9:19-21). The language of the stay-put provision states that a child remains in his "then current" educational placement. 20 U.S.C. § 1415(j). As the District recognizes, a child's "current" placement may be the placement and services he has been receiving pursuant to a settlement agreement. (District's Opposition, 9:25-10:6). The stay-put provision "connotes preservation of the status quo, it [therefore] refers to the operative placement actually functioning at the time the dispute first arises." *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625-26 (6th Cir. 1990). "Stay-put" just entitles a child to receive his "current" placement at District expense. It does not revive or make enforceable a completed contract.

As anticipated, the District argues that, "the law requires the Parties to implement the stay put placement and services set forth in the Agreement until the Court renders its decision." (District's Opposition, 15-20). However, the law requires

-4-

no such thing. As discussed in the Motion to Dismiss, the stay-put placement may not be enforced against a child. The child's parents always retain the right to remove a child from those portions of a stay put placement that they choose. *See, Sch. Committee of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-370 (1985); *see also, id.* at 372.

The District attempts to distinguish this controlling Supreme Court authority on the meaningless pretext that *Burlington* involved stay-put stemming from an IEP document whereas this case allegedly involves stay-put stemming from a settlement agreement. (District's Opposition, 12:20-21). Such distinction is irrelevant and immaterial. What matters under a stay-put analysis is what the child was actually receiving and not the form of the document that created such placement and services. "[T]he current educational placement will be the operative placement under which the child is <u>actually receiving</u> instruction at the time the dispute arises." *Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 190 (3d Cir. 2005) (emphasis added) (citation omitted). Therefore, the form of the document describing such placement is irrelevant to the analysis.

The District last attempts to cast Student's exercise of his stay put rights as "revoking consent to the Settlement Agreement." (District's Opposition, 12:4). Such argument is completely contrary to the acknowledged facts of the case. As long as the Agreement was operative (though the end of the 2006/2007 school year) Student at all times abided by his obligations. As the District admits, Student attended Flora Vista at all times while the Agreement was in operation. Other than this naked allegation of a revocation of consent, the District has alleged no facts to support its assertion.

### D. Public Policy Specifically Prevents the District from Enforcing Stay Put on a Child

The District lastly asserts that, even if contract principles and statutory authority do not aid their argument, "[p]rinciples of equity and public policy demonstrate that the District has stated a cognizable legal claim in its Counterclaim."

-5-

REPLY TO THE DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM
CASE NO.: 08-CV-412-L-JMA

(District's Opposition, 13:6-7). However, principles of public policy have already been decided against the District. Congress, in enacting the stay put provision, has thereby decided that the public policy of this country is to provide a child with disabilities with his current educational placement. 20 U.S.C. § 1415(j). Recognizing that policy, the Supreme Court has found that such right is "unequivocal." *Honig v. Doe*, 484 U.S. 305, 323 (1988). As discussed above, the Supreme Court has found that the stay put right does not eliminate a parent's right to change the child's placement. *Burlington*, 471 U.S. 359. Therefore, the public policy considerations have been resoundingly decided in favor of Student.

In a near final flourish, the District pens the following rhetoric, "[t]o allow Counterdefendants to void portions of the Agreement when those portions become unpalatable would also contravene the policy of encouraging settlement agreements to resolve disputes." (District's Opposition, 20-22). This argument bears no resemblance to the facts that the District has alleged. The District states no facts that demonstrates that Student denied any of his obligations during the time the Agreement was operative. Further, the application of stay-put does not in any way "have a chilling effect" on a school district's "willingness to enter into" settlement agreements. (District's Opposition, 13:28-14:1). Any school district with competent legal counsel enters into a settlement agreement with the understanding that, if a dispute arises at the end of the agreement's terms, stay put will arise. Indeed, in other cases parties have expressly bargained for waivers as to stay put placement. *See, e.g., K.G. v. Plainville Bd. of Educ.*, 2007 WL 80671 (D. Conn. 2007) (finding language in the settlement agreement amounted to a waiver by the student of stay put protections). As such, the District's public policy argument must fail since the policy has been placed firmly on the side of the child with disabilities.

//

//

//

## III.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court dismiss the District's Counterclaim as against R.M., N.M., and B.M. with prejudice. Student further requests that leave to amend be denied because, under the facts as the District has alleged them, there cannot possibly exists a cause of action for breach of contract.

DATED:   August 18, 2008                    ROBERTS & ADAMS

                                            By:   s/ Drew Massey
                                            Timothy A. Adams
                                            Jennifer J. Kropke
                                            Drew Massey
                                            Attorneys for Plaintiff B.M., by and through R.M.